**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

CONSTELLATION LEASING, LLC,

        Plaintiff(s),          **DECISION AND ORDER**
    v.          08-CV-6558

OXFORD AVIATION, INC.,

        Defendant(s).
_____

**Factual Background:**

    This action stems from an agreement entered into between the parties in April and May 2008, in which defendant Oxford Aviation, Inc. ("Oxford") agreed to perform certain work on the interior of a Dassault-Breguet Mystere Falcon 900B, FAA Reg. No. N117SF airplane ("the Aircraft") owned by plaintiff Constellation Leasing, LLC ("Constellation Leasing"). From June 2008 through October 2008, Oxford performed work on the Aircraft pursuant to the terms of a contract in which Oxford agreed to refurbish the interior of the aircraft. The interior of the aircraft was removed from the aircraft and delivered by truck to Oxford's facility in Oxford, Maine, where Oxford employees performed the work required by the contract.

    By June 2008, Oxford had completed its work and, as agreed with Constellation Leasing, made arrangements to have the refurbished interior transported back to Rochester where it would be reinstalled on the aircraft. During the re-installation process, Constellation Leasing claims that the Oxford employees

damaged the hull of the aircraft when they drilled holes in order to install a rear table.[1]  Oxford offered to pay to repair the damage caused in installing the table.  An authorized repair expert estimated the repairs could be completed at a cost of less than $5000.  However, on October 24, 2008, Constellation Brands, Inc. ("CBI") sent a letter to Oxford in which CBI informed Oxford that it intended to have another supplier assess and repair the damage and to complete the remodeling work.  See Exhibit "B" annexed to Docket # 16 (Letter from Thomas J. Mullin, Executive Vice President and General Counsel of CBI to Oxford).  Further, in that letter, CBI informed Oxford that it had notified its insurer, and "suggested" that Oxford notify its insurer of the incident "to speed resolution of this issue."  Id.

On October 30, 2008, Oxford filed a declaratory judgment action in Maine Superior Court against CBI.  On December 5, 2008, CBI removed the state court action to the United States District Court, District of Maine.  In its Answer to the Maine action, CBI asserts that the owner of the Aircraft is its subsidiary company, Constellation Leasing, and that the agreement regarding

---

[1] Oxford maintains that it warned plaintiff about a potential problem with this work -- namely, that it did not have the correct size rivets specified to anchor the plate supporting the rear table to the interior -- but plaintiff's Director of Maintenance, Kenneth Bricker, "approved the use of [] substitute screws and also confirmed that the location where the holes were to be drilled would not cause any problems."  See Affidavit of James Horowitz annexed to Docket # 12 at ¶¶ 8-9.

the work to be done on the Aircraft was between Constellation Leasing and Oxford.  See Answer attached as Exhibit "2" to Declaration of Francine P. Aronson, Esq. (hereinafter "Aronson Decl.") annexed to Docket # 12 at ¶ 3.

Thereafter, on December 9, 2008, plaintiff Constellation Leasing commenced its own action against Oxford here in the Western District of New York.  (Docket # 1).  On December 23, 2008, Oxford filed a motion in its Maine action requesting leave to amend its Complaint to add Constellation Leasing as a defendant, and to add a cause of action for breach of contract for the $20,000 balance allegedly due to Oxford under the contract. See Oxford's Proposed Amended Complaint attached to Exhibit "3" to Aronson Decl.  On May 17, 2009, CBI filed an objection to Oxford's motion, and also filed a motion (in the Maine action) for judgment on the pleadings, or for a transfer of venue to the Western District of New York, or for a stay of proceedings. See Exhibit "5" attached to Aronson Decl.  On March 30, 2009, Judge John H. Rich III, United States Magistrate Judge, District of Maine, ordered, *inter alia*, that "discovery in the New York matter will be applicable in this matter," return dates with respect to Oxford's motion to amend and CBI's motion for judgment on the pleadings are stayed, and all scheduling order deadlines are deferred.  See Exhibit "6" attached to Aronson Decl.

3

Currently pending before the Court is Oxford's motion to transfer venue to the District of Maine and for consolidation with Oxford's pending action in Maine. (Docket # 12). Oxford maintains that the action should be transferred and consolidated with the "first-filed" Maine action because CBI, as the parent company of Constellation Leasing, is the "true party in interest," and because the instant action involves the same questions of law and fact as the Maine action. See Defendant Oxford's Memorandum of Law annexed to Docket # 12 at pp. 7-12. Further, Oxford asserts that the action should be transferred "for the convenience of the parties and witnesses, and in the interest of justice." See id. at pp. 12-20.

In response, plaintiff Constellation Leasing contends that transfer and consolidation is inappropriate because it -- rather than its parent company, CBI -- is the true party in interest because it is the actual owner of the Aircraft at issue and, therefore, is the party who suffered damages . See Constellation Leasing's Memorandum in Opposition (Docket # 16) at pp. 5-6. Further, Constellation Leasing maintains that the Western District of New York is the proper venue because the Aircraft is located here, and because Oxford damaged the Aircraft here. See id. at pp. 6-9. Plaintiff asserts that Oxford's Maine action constitutes an inappropriate "anticipatory" lawsuit and, therefore, the Court should decline to follow the first-filed

4

rule.  See id. at pp. 13-16.  Plaintiff also maintains that the convenience of witnesses and location of relevant documents favors keeping this action in the Western District.  See id. at pp. 10-12.

In Reply, Oxford contends that its Maine action is not an improper anticipatory action, but rather is a proper first-filed action, as it "had no choice but to commence its declaratory judgment action in State Court, Maine in an effort to complete the work agreed to under its contract and to mitigate any alleged damages."  See Defendant Oxford's Reply Memorandum of Law (Docket # 18) at pp. 1-2.  Oxford maintains that any confusion regarding the "true party in interest" was created by the Constellation Companies, as the officers, directors and personnel of said Companies "overlap" and the roles of each of the Companies was not entirely clear.

## Discussion

28 U.S.C. § 1391(a) states that, in cases where jurisdiction is founded solely on diversity of citizenship, venue is proper only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

>      (3) a judicial district in which any
>      defendant is subject to personal
>      jurisdiction at the time the action is
>      commenced, if there is no district in which
>      the action may otherwise be brought.

"[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992).

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In deciding whether change of venue is appropriate, courts consider various factors, including the plaintiff's choice of forum, convenience of witnesses, location of documents and witnesses, convenience of the parties, the locus of the event or omission, the availability of ways to compel uncooperative witnesses, and the relative means of the parties. See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006).

As a general rule, where identical actions are proceeding concurrently in two federal courts, "the first suit should have priority." Employers Ins. of Wausau v. Fox Entm't Group, Inc., 522 F.3d 271, 274-75 (2d Cir. 2008). This so-called "first-filed" rule "usually applies when identical or substantially similar parties and claims are present in both courts." In re

6

Cuyahoga Equip. Corp., 980 F.2d at 116-17. This rule, however, should be weighed against the other aforementioned considerations, as well as any other "special circumstances" which may preclude its application. See Employers Ins. of Wausau, 522 F.3d at 275. In other words, the first-filed rule is a presumption that must be overcome by the weight of the remaining factors.[2] Id. One special circumstance which can prelude application of the first-filed rule is an improper anticipatory filing. See Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995). An improper anticipatory filing is "one made under the apparent threat of a presumed adversary filing the mirror image of that suit in a different federal district [court]." Id.; see also Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 557

---

[2] Some courts have held that the determination on the application of the first-filed rule should be made by the district court in which the first-filed case resides. See, e.g., National Equip. Rental, Ltd. v. Fowler, 287 F.2d 43, 45 (2d Cir. 1961)("Sound judicial discretion dictates that the second court decline its consideration of the action before it until the prior action before the first court is terminated.")(citations omitted); Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles, 542 F. Supp. 1317 (S.D.N.Y. 1982)(finding that "the district court hearing the first-filed action should determine whether special circumstances dictate that the first action be dismissed in favor of a later-filed action"); TPS Holdings, Inc. v. Intra-Gold Indus., Inc., 91 F.3d 1, 4 (1st Cir. 1996)("Where the overlap between the two suits is nearly complete, the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer."). Here, however, the Maine District Court has stayed all proceedings pending the outcome of this motion. As a result, this Court shall determine whether the first-filed rule applies.

(S.D.N.Y. 2000). However, the mere fact "that an action is brought as one for a declaratory judgment 'does not necessarily [mean that it] constitute[s] an anticipatory filing for the purposes of an exception to the first filed rule.'" Ontel, 899 F. Supp. at 1150.

In this case substantially similar parties are litigating what is essentially the same claim in two different venues. Defendant Oxford's Maine action was "first-filed." Considering the totality of circumstances, I find that Oxford's motion to transfer this action to the "first filed" district should be granted. At its core, this is a breach of contract action. Constellation Leasing chose to contract with a Maine company recognizing that the requested work would be completed in Maine by Oxford's employees. The fact that the final inspection of the aircraft was completed in Rochester does not change the fact that virtually all of the obligations of the contract were to be performed in Maine at Oxford's principal place of business. Depositions of relevant witnesses will occur in both Maine and the Western District of New York. As in most cases where relevant acts occurred in multiple locations, various individuals on both sides will be inconvenienced in some way during the discovery process. Here, counsel has been cooperating in scheduling depositions. On January 28, 2010, counsel wrote the Court to indicate that they have completed the deposition noticed

by Constellation in Maine and are now scheduling the depositions noticed by Oxford in Rochester.  (Docket # 31).  Remaining witnesses to be deposed include individuals in South Carolina. Id.  The District Court in Maine has already determined that any discovery conducted can be used in both cases.  Combining the cases before one court who can supervise discovery, determine motions and conduct a trial on the merits if necessary promotes judicial economy and efficiency.  Finally, the relative means of the parties weighs in favor of transferring this case to Maine. See 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 135 (S.D.N.Y. 1994)("Where a disparity exists between the means of the parties ... the court may consider the relative means of the parties in determining where a case should proceed."); see, e.g., GE Capital Franchise Fin. Corp. v. Cosentino, No. 08-CV-202S, 2009 WL 1812821, at *6 (W.D.N.Y. June 25, 2009)(finding that the relative financial means of the parties weighed in favor of transfer).

   In sum, the Court finds that considerations of convenience and fairness (see 28 U.S.C. § 1404[a]) support the determination that the pending action in the Western District of New York be transferred to the District of Maine.

## Conclusion

Defendant's motion to transfer venue (Docket # 12) is granted.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: March 29, 2010
Rochester, New York